K.S.,

      Plaintiff,

v.

TOWN OF PALM BEACH SHORES
and CHARLES HOEFFER,

      Defendants.

_____/

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT II**

      **THIS CAUSE** is before the Court on Defendant, Town of Palm Beach Shores', Motion to Dismiss Count II of Plaintiff's First Amended Complaint and Memorandum of Law in Support [DE 39]. The Court has carefully considered Defendant's Motion, Plaintiff's Memorandum of Law in Opposition thereto [DE 47], and Defendant's Reply [DE 50], and is otherwise fully advised in the premises. For the reasons set forth below, Defendant's Motion is **GRANTED** and Count II of Plaintiff's First Amended Complaint [DE 31] is **DISMISSED WITHOUT PREJUDICE**.

## I.     INTRODUCTION

      This action arises out of two alleged incidents of sexual assault committed against Plaintiff by Defendant Charles Hoeffer while he was employed as a police officer with the Town of Palm Beach Shores Police Department. In her First Amended Complaint, Plaintiff asserts claims against Defendant Hoeffer for violation of her civil rights, battery, assault, and intentional infliction of emotional distress, and against Defendant Town of Palm Beach Shores for violation of her civil rights and negligent hiring, supervision, retention, and training. Only one of these

claims is at issue for purposes of the Motion presently before the Court: Plaintiff's claim against Defendant Town of Palm Beach Shores for violation of her civil rights pursuant to 42 U.S.C. § 1983, asserted in Count II of Plaintiff's First Amended Complaint.

Defendant Town of Palm Beach Shores argues that this claim must be dismissed because Plaintiff has not sufficiently alleged (1) that Defendant Hoeffer was acting under color of state law at the time of the alleged incidents and (2) that Defendant Town of Palm Beach Shores exhibited deliberate indifference in failing to train its police officers not to commit sexual assaults. The Court concludes that Plaintiff has not alleged sufficient facts to establish that Defendant Hoeffer was acting under color of state law at the time of the alleged incidents. For that reason, Count II of Plaintiff's First Amended Complaint must be dismissed. Having reached that conclusion, the Court does not address Defendant's alternate argument concerning the sufficiency of Plaintiff's allegations of deliberate indifference and failure to train.[1]

## II.    BACKGROUND[2]

Defendant Hoeffer was employed as a police officer with the Town of Palm Beach Shores Police Department from 2008 to 2016. DE 31, First Amended Complaint ¶ 7. The Town of Palm Beach Shores Police Department follows a "community policing philosophy" with a focus on "excellent community involvement and support." *Id.* ¶ 41. Officers are encouraged to interact with residents, get to know them, and provide a friendly face. *Id.* ¶ 42. It is common for officers to engage in friendly conversation with residents while they walk their dogs, exercise, or ride bicycles around the Town. *Id.* ¶ 43.

---

[1] While the Court notes that Plaintiff's First Amended Complaint sets forth a number of allegations relevant to deliberate indifference and failure to train, the Court does not include those allegations in this Order because it does not reach those issues.

[2] The background facts set forth herein are drawn from Plaintiff's First Amended Complaint. For purposes of the Motion presently before it, the Court views the First Amended Complaint in the light most favorable to Plaintiff and accepts all of Plaintiff's well-pleaded facts as true. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007) (citing *St. Joseph's Hosp. v. Hospital Corp. of America*, 795 F.2d at 954 (11th Cir. 1986)).

Plaintiff, who is legally blind, first met Defendant Hoeffer in October 2013 when she and her fiancée were preparing to take a walk around the Town. *Id.* ¶¶ 3, 52. As Plaintiff was speaking to another officer, Defendant Hoeffer approached and joined the conversation. *Id.* Whenever Plaintiff took walks around the Town after that initial meeting, Defendant Hoeffer— who asked Plaintiff to call him "Charlie"—often engaged her in conversations. *Id.* ¶¶ 53–54.

Shortly after she first met Defendant Hoeffer in October 2013, Plaintiff took her dog for a walk around the Town, during which she lost the dog's jacket. *Id.* ¶¶ 52, 54. Plaintiff reported the lost jacket to the Town of Palm Beach Shores Police Department and asked that she be called if the jacket were recovered. *Id.* A couple of hours later, Defendant Hoeffer called Plaintiff, told her that the jacket had been found, and offered to bring the jacket to her home. *Id.* ¶ 55. Plaintiff wanted to pick up the jacket at the Town of Palm Beach Shores Police Department, but Defendant Hoeffer demanded Plaintiff's address and insisted on bringing the jacket to her home, which he did. *Id.* ¶ 55.

On or about March 5, 2014[3]—about five months after Plaintiff and Defendant Hoeffer first met—Defendant Hoeffer called Plaintiff, who had just exited the shower. *Id.* ¶ 56. Defendant Hoeffer questioned Plaintiff about her showers, asking: "Why are you taking such long showers? What, do you masturbate in there?" *Id.* Hours later, Defendant Hoeffer called Plaintiff again and told her that he was on his way to her house, was already in her neighborhood, and was about to arrive at her door. *Id.* ¶ 57. Without permission or an invitation from Plaintiff, Defendant Hoeffer had been granted access to Plaintiff's neighborhood—entrance

---

[3] It is unclear precisely when Defendant Hoeffer returned the lost dog jacket to Plaintiff, as Plaintiff alleges only that it occurred "[s]hortly after" she and Defendant Hoeffer first met in October 2013. *See* DE 31, First Amended Complaint ¶¶ 52, 54. However, Plaintiff appears to allege that Defendant Hoeffer returned the jacket at some point prior to March 5, 2014. In other words, the return of the jacket is distinct from the incident that allegedly occurred on March 5, 2014.

to which was restricted by a guarded security gate—because he was wearing his police uniform and driving a marked police vehicle. *Id.* ¶¶ 57–58. When he arrived at her house, Defendant Hoeffer knocked on Plaintiff's front door. *Id.* ¶ 57.

Defendant Hoeffer then "invited himself in [Plaintiff's] home, pushed his police issued firearm into [her] body," exposed his penis, and demanded that Plaintiff perform oral sex on him. *Id.* ¶ 59. Defendant Hoeffer grabbed Plaintiff's hands and attempted to place them on his penis, while Plaintiff "loudly and unequivocally" resisted. *Id.* Defendant Hoeffer became more aggressive, grabbed Plaintiff by the legs, rubbed her left leg against his police issued firearm "as a show of force and intimidation," and vaginally penetrated Plaintiff. *Id.* ¶ 60. During this assault, Defendant Hoeffer made a number of sexual comments to Plaintiff. *Id.* ¶ 61. Afterward, Defendant Hoeffer used Plaintiff's sink to clean himself off and left her home without another word. *Id.* ¶ 62.

On or about April 11, 2014, Defendant Hoeffer called Plaintiff's cell phone. *Id.* ¶ 63. Believing the call was from her fiancée, with whom she had been fighting, Plaintiff answered. *Id.* Defendant Hoeffer heard Plaintiff crying and said "I wish I was there. I could give you a hug." *Id.* Defendant Hoeffer then insisted that he come to Plaintiff's home to comfort her, but Plaintiff told him that he was not welcome in her home. *Id.* Minutes later, Defendant Hoeffer arrived at Plaintiff's home and "commit[ed] another sexual battery against [her] by vaginally penetrating her." *Id.* ¶ 64.

### III. <u>LEGAL STANDARD</u>

To adequately plead a claim for relief, Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 12(b)(6), a motion to dismiss should be granted only if the plaintiff is unable to articulate

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). When determining whether a claim has facial plausibility, "a court must view a complaint in the light most favorable to the plaintiff and accept all of the plaintiff's well-pleaded facts as true." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007).

However, the court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. "Mere labels and conclusions or a formulaic recitation of the elements of a cause of action will not do, and a plaintiff cannot rely on naked assertions devoid of further factual enhancement." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013). "[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). In sum, "[t]he plausibility standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the defendant's liability." *Miyahira v. Vitacost.com, Inc.*, 715 F.3d 1257, 1265 (11th Cir. 2013) (quoting *Twombly*, 550 U.S. at 556).

## IV.    DISCUSSION

"A successful section 1983 action requires that the plaintiff show she was deprived of a federal right by a person acting under color of state law." *Almand v. DeKalb Cty., Ga.*, 103 F.3d 1510, 1513 (11th Cir. 1997) (citing *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992)). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state." *Id.* (citing *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522

5

(11th Cir. 1995)). However, "not all acts by state employees are acts under color of law. The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual." *Id.* (internal quotation marks and citations omitted).

"[U]under certain circumstances, a rape of a person by a police officer or other state actor could violate the constitution." *Id.* (citing *Parker v Williams*, 862 F.2d 1471 (11th Cir. 1989)). In such cases, a state employee acts under color of law when he uses his authority to create the opportunity for or to facilitate a sexual assault. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1305 (11th Cir. 2001). On the other hand,

> where the performance of a state actor's official duties merely facilitated the meeting of or development of a relationship between the state actor and another person; and the state actor later, on his own time and wholly independent of his official duties, commits an assault or other constitutional tort against that person . . . the law is clear that the state actor is not acting under color of law.

*Id.* at 1306 (citing *Almand*, 103 F.3d at 1514); *see also id.* at n.12 ("Although subtle, we again reiterate the critical distinction in the color of law analysis between those cases where a state actor directly uses his official authority to create the opportunity to sexually assault a victim and those cases where a state actor merely uses his authority to develop or facilitate a relationship of trust with a victim, even though that relationship in some attenuated sense serves as a but for cause of a later sexual assault).

For example, in *Almand*, the Eleventh Circuit Court of Appeals concluded that the defendant police officer was not acting under color of law when he raped the plaintiff, with whom he had become acquainted through his official duties, at her home. *See* 103 F.3d at 1514. On the day of the rape, the defendant initially gained access to the plaintiff's home on the pretense of discussing police business—the progress of an investigation into the rape of the plaintiff's daughter. *See id.* When the defendant made sexual advances toward the plaintiff, she

demanded that he leave her apartment. *Id.* The defendant complied and the plaintiff closed the

front door behind him. *Id.* The defendant then forced open the front door and raped the plaintiff

inside her apartment. *Id.*

The court noted that, while the defendant was not in uniform and was off-duty at the

time, his initial entry into the plaintiff's apartment probably occurred under color of law because

he gained access by virtue of his role as a police officer and his professed intention to discuss

police business. *Id.* at 1514–15 & n.10. However, when the defendant forcibly reentered the

plaintiff's apartment after having been directed to leave, "he was no different from any other

ruffian." *Id.* at 1515. As the court explained,

> [the defendant's] act of breaking into the apartment and, by force, raping [the
> plaintiff] was a private act not accomplished because of power possessed by
> virtue of state law and made possible only because the wrongdoer [was] clothed
> with the authority of state law. Considering that [the defendant] gained entry to
> the apartment by forcibly breaking in, any thug or burglar could have committed
> the same violent acts. Once [the defendant] resorted to sheer force to break, to
> enter, and to rape, his status as a police officer had no bearing on his wicked
> behavior.

*Id.* (internal quotation marks and citations omitted). The court therefore concluded that the

defendant was not acting under color of state law when he raped the plaintiff; his conduct was

instead the act of a private citizen and, as such, did not violate the Constitution. *Id.*

By contrast, in *Griffin*, the Eleventh Circuit Court of Appeals concluded that the

defendant, a city manager, was acting under color of law when he raped the plaintiff, a city

employee. *See* 261 F.3d at 1304–05. In reaching that conclusion, the court relied on the

following facts: The rape occurred following a Rotary Club meeting, which was not an official

function, but which city employees were expected to attend. *Id.* at 1304. After learning that the

plaintiff was having car trouble and had arranged for the police chief to drive her home, the

defendant invoked his authority as city manager to create an opportunity to be alone with the

plaintiff, to drive her home, and to rape her. *Id.* The defendant told the plaintiff that he would drive her home and that she should inform the police chief of that fact; the defendant himself also instructed the police chief that he would drive the plaintiff home and that the situation had been taken care of. *Id.* The defendant used his authority to permit the plaintiff to park her car inside the police department and told her that he would arrange for the city to fix it. *Id.* While driving to the plaintiff's home, the plaintiff and the defendant discussed her work for the city, and the defendant attempted to dissuade her from leaving her job. *Id.* When they arrived at the plaintiff's home, the defendant insisted on helping the plaintiff with equipment she had used for a musical performance during the Rotary Club meeting. *Id.* Inside her apartment, the defendant began making sexual advances; when the plaintiff resisted, the defendant reminded her of his authority. *Id.* The defendant then raped the plaintiff. *Id.*

While the court explained that these facts were sufficient on their own to conclude that the defendant was acting under color of state law at the time of the rape, the court also noted that it was viewing these facts in light of a persistent pattern of the defendant's abuse of authority and harassment of the plaintiff from the day the defendant began his employment as city manager in June 1995 until the plaintiff left her job with the city toward the end of that year. *Id.* at 1305. The court concluded that the defendant's official interactions with the plaintiff as her boss during and after work hours, his continual sexual harassment of her during those interactions, and the ultimate rape constituted an indivisible, ongoing series of events. *Id.* "[W]ithin this context of [the defendant's] continual exploitation of and leverage of his authority over [the plaintiff]," the court found "a sufficient nexus between his duties and obligations as City Manager and [the plaintiff's] boss and the abuse of that authority to facilitate his harassment and ultimate sexual assault of her." *Id.*

In the instant case, the Court concludes that Plaintiff has not alleged sufficient facts to establish that Defendant Hoeffer was acting under color of state law during either of the two alleged incidents of sexual assault. Plaintiff's allegations may establish that Defendant Hoeffer's role as a police officer facilitated the development of a relationship with Plaintiff. For example, Defendant Hoeffer was expected to establish a friendly relationship with all Town residents in his role as a police officer and, consistent with that expectation, Defendant Hoeffer often engaged Plaintiff in conversation as she walked around the Town. In addition, Defendant Hoeffer visited Plaintiff at her home in the course of official police business when he returned the dog jacket that she had reported as lost. However, Plaintiff's allegations do not establish that Defendant Hoeffer's role as a police officer created the opportunity for either alleged incident of sexual assault to occur. This is a critical distinction. *See Griffin*, 261 F.3d at 1306 & n.12.

With respect to the first incident, which occurred on or about March 5, 2014,[4] Plaintiff alleges that Defendant Hoeffer gained access to her neighborhood through a guarded security gate because he was in uniform and was driving a marked police vehicle. However, Plaintiff does not allege that she allowed Defendant Hoeffer into her *home* because he was in uniform and driving a marked police vehicle. Nor does Plaintiff allege that she allowed him into her home on the pretense of discussing official police business. (Given the alleged content of the two telephone calls immediately preceding Defendant Hoeffer's arrival at Plaintiff's home, it does not appear that Defendant Hoeffer attempted any such pretense.) In fact, there is no allegation that Plaintiff allowed Defendant Hoeffer into her home at all. Plaintiff specifically alleges that Defendant Hoeffer knocked on Plaintiff's front door, then "invited himself" into her home. *See*

---

[4] The Court again notes that this incident is distinct from the time when Defendant Hoeffer returned the lost dog jacket to Plaintiff, which occurred "[s]hortly after" she and Defendant Hoeffer first met in October 2013. *See* DE 31, First Amended Complaint ¶¶ 52, 54. The Court also notes the absence of allegations about any other official police business to which Defendant Hoeffer's visit to Plaintiff's home on March 5, 2014 may have related.

DE 31, First Amended Complaint ¶¶ 57, 59. There is no allegation, for example, that Plaintiff saw Defendant Hoeffer arrive and, recognizing him as a police officer, opened her door and allowed him inside.[5]

Without additional facts concerning the circumstances under which Defendant Hoeffer entered Plaintiff's home, Plaintiff's allegations appear more analogous to the assault in *Almand* than to that in *Griffin*. While the facts alleged in the instant case are certainly distinguishable from those surrounding the assault in *Almand*, they are similar to the extent that Defendant Hoeffer does not appear to have used his official authority to persuade Plaintiff to allow him into her home and to create an opportunity for sexual assault. As alleged, Plaintiff's First Amended Complaint contains neither the type of facts immediately surrounding the assault on which the *Griffin* court relied to find that the defendant was acting under color of state law, nor the history of persistent abuse and harassment that provided a context for those facts. Accordingly, the allegations concerning this incident fail to state a plausible claim. The Court is not persuaded otherwise by *Doe v. Mann*, No. 605CV259-ORL-31DAB, 2006 WL 3060036, at *2 (M.D. Fla. Oct. 26, 2006), another case on which Plaintiff relies, which is not binding on this Court and relies on facts distinguishable from those alleged in the instant case. Finally, the allegation that Defendant Hoeffer used a police issued firearm during the incident does not require the Court to conclude that he was acting under color of state law. *See Myers v. Bowman*, 713 F.3d 1319, 1330 (11th Cir. 2013) (quoting *Butler v. Sheriff of Palm Beach Cty.*, 685 F.3d 1261, 1267 (11th Cir. 2012)).

---

[5] The Court notes that Plaintiff alleges she is "legally blind." *See* DE 31, First Amended Complaint ¶ 3. However, Plaintiff does not allege whether she is completely without vision. To the extent that she is, the Court notes the absence of any allegation that, for example, Plaintiff heard Defendant Hoeffer knock on her door, inquired about the visitor's identity, and, upon learning that it was a police officer, opened her door and allowed him inside.

With respect to the second incident, which occurred on or about April 11, 2014, Plaintiff's First Amended Complaint is devoid of any allegations concerning whether Defendant Hoeffer was in uniform, driving a marked police vehicle, or on duty at the time. Nor does Plaintiff allege how Defendant Hoeffer gained access to Plaintiff's home, creating the opportunity to sexually assault her. Once again, given the alleged content of the telephone call immediately preceding Defendant Hoeffer's arrival, it appears that Plaintiff did not allow him into her home on the pretense of discussing official police business. Plaintiff's allegations that Defendant Hoeffer insisted on coming to her home and that Plaintiff told him he was not welcome suggest that Plaintiff did not give Defendant Hoeffer permission to enter her home at all, let alone because of his role as a police officer. Without additional facts concerning the circumstances under which Defendant Hoeffer entered Plaintiff's home, Plaintiff's allegations appear more analogous to the assault in *Almand* than to that in *Griffin*, at least to the extent that Defendant Hoeffer does not appear to have used his official authority to persuade Plaintiff to allow him into her home and to create an opportunity for sexual assault. The allegations concerning this incident therefore fail to state a plausible claim.

### V.    CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1.    Defendant, Town of Palm Beach Shores', Motion to Dismiss Count II of Plaintiff's First Amended Complaint and Memorandum of Law in Support [DE 39] is **GRANTED**.

2.    Count II of Plaintiff's First Amended Complaint and Jury Trial Demand [DE 31] is **DISMISSED WITHOUT PREJUDICE**.

**3.** Plaintiff may file a second amended complaint by no later than **October 13, 2017**.

Any response thereto must be filed by no later than **October 20, 2017**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this <u>6th</u> day of October, 2017.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record